real. genuine petition in bankruptcy, then it might be true that where an amendment was allowed so as to give it effect as a petition in bankruptcy, the assignment would only take effect from the latter date; but where a legal petition in bankruptcy is filed, it is subject always to the right of the parties who are petitioners, whether the bankrupts, or creditors, to make amendments to the petition. It is filed subject to the power of the court to allow amendments, and, therefore, that is a condition which must always be understood, that it is subject to the right of the petitioners to make amendments, and to the power of the court to permit them; and when made, they, as a general rule, relate back, and take effect from the time that the petition in bankruptcy was filed. It is still a petition in bankruptcy; it still takes effect from the time that it is filed, and the property of the bankrupt is vested in the assignee, in my opinion, from the time that the petition is filed. So that in this case, as the bankrupt undertook to transfer assets of his after his petition in bankruptcy was filed, he had no power over them. The act gave no right, and the defendants acquired none by the transfer. The property by operation of law was vested in the assignee.

The next question is, whether or not these assets were a part of the estate of the bankrupt. I think they were. They grew out of a contract made between the bankrupt and certain other parties, by which a speculation in real estate was arranged, and the agreement contained in the contract was carried into effect, mainly by Allen, the bankrupt. He was to advance the money to purchase the real estate. Upon the advances he was to have ten per cent. interest; and the profits of the speculation were to be divided between him and certain other parties. At the time the petition in bankruptcy was filed. no one else, I think, was interested. although there were other parties originally interested in it; no one else, perhaps, except Mr. Tracy, now dead, and Mr. Withrow. The interest of Withrow, as I understand. has been ascertained by decree of the court against the assignee, and his rights have been adjudicated. I can have no doubt that there were rights in these assets which grew out of these real estate operations, and which were in the hands of Allen, which should properly vest in the assignee. It is not like the case of a partnership where all the partnership property is vested in the surviving partners, in the case of the death or bankruptcy of one of the partners, and where there are only certain interests which go to the assignee or to the estate. In this case, there was an actual interest such as could pass, and did pass, to the assignee, in this property and in these assets. Allen had made very large advances for the benefit of those who were interested with him. For those advances they owed him, and he had a first claim upon these assets for the advances, amounting to over $60,000, I think;

so that, that was such an interest in Allen at the time his petition in bankruptcy was filed, as would pass to his assignee. If there are any equities in other parties, of course, these equities can be adjusted by proper proceedings against the assignee. The assignee, as the representative of Allen, has the right to control these assets, subject to any equities that may exist.

Now, it may be said, and such is undoubtedly the fact, that this is a hard case for the defendants; but it is like any other act that is done where there are proceedings pending, which proceedings operate as a seizure of the property which is sought to be transferred. For the reasons I have given, I think that the bankruptcy proceedings did operate upon all the assets of the bankrupt from the time that the petition was filed, depriving the bankrupt of all right over them; and, of course, he could exercise none, and could clothe no one else with any right. It is. therefore, the ordinary case of a party who, under circumstances like these, deals with a person who has no right over the property. A great many cases of that kind occur in business matters, where an innocent party has to suffer in consequence of the want of power of another person to convey the property.

I think, therefore, that the plaintiff is entitled to a decree in this case. The questions are important, and especially the one in relation to the bankruptcy—the effect of the petition in bankruptcy and the amendment; and I think there is no decision exactly in point in such a case, although there are some which indicate pretty clearly the general current of authority as to the effect of a petition.

The opinion in this case was affirmed by the supreme court on appeal in Bank v. Sherman. 101 U. S. 403.

As to amendments to petitions in bankruptcy. see, also, In re Williams [Case No. 17,700]: In re Patterson [Id. 10,815]: Stone v. Connelly, 1 Metc. (Ky.) 652: Stoddard v. Myers. 8 Ohio, 203: Gibbon v. Daugherty, 10 Ohio St. 365.

---

SHERMAN (LAWRENCE v.). See Case No. 8,144.

---

## Case No. 12,766.

### SHERMAN v. MOTT.

[Cited in Sherman v. Mott. Case No. 12,767. Nowhere reported; opinion not now accessible.]

---

## Case No. 12,767.

### SHERMAN et al. v. MOTT et al.

[5 Ben. 372:[1] 15 Int. Rev. Rec. 56; 11 Am. Law Reg. (N. S.) 716; 7 Am. Law Rev. 574.]

District Court, S. D. New York. Nov., 1871.

COLLISION—VESSEL AT ANCHOR—INEVITABLE ACCIDENT.

1. A brig. a schooner, and a bark lay at a wharf at Galveston, Texas. A heavy storm

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]